574 P.2d 107 (1977)
THOMAS & SON TRANSFER LINE, INC., Plaintiff-Appellant,
v.
KENYON, INC., a dissolved Colorado Corporation, Ralph D. Kenyon, Lucille Kenyon, Jack P. Kenyon, Audrey A. Moritz, Abe R. Cohen, Sam E. Cohen, Irene P. Cohen, and Betty Cohen, Defendants-Appellees.
No. 76-641.
Colorado Court of Appeals, Div. III.
October 20, 1977.
Rehearing Denied November 10, 1977.
Certiorari Granted February 6, 1978.
*109 Willis V. Carpenter, Andrew S. Klatskin, Denver, for plaintiff-appellant.
Atler, Zall & Haligman, P. C., Edward I. Haligman, Marc R. Carlson, Denver, for defendants-appellees Kenyon, Inc., Ralph D. Kenyon, Lucille Kenyon, Jack P. Kenyon, and Audrey A. Moritz.
Berenbaum, Weinberger & Susman, Stephen T. Susman, Denver, for defendants-appellees Abe R. Cohen, Sam E. Cohen, Irene P. Cohen, and Betty Cohen.
VanCISE, Judge.
Plaintiff, Thomas & Son Transfer Line, Inc. (lessee), appeals that part of the judgment denying its prayer for specific performance of a right of refusal contained in a lease from defendants Kenyon, Inc., Ralph D., Lucille, and Jack P. Kenyon, and Audrey A. Moritz (the lessors), pertaining to commercial property sold by lessors to defendants Cohen (the buyers). No cross appeals were filed. We reverse.
The essential facts do not appear to be in dispute. On or about May 1, 1968, the lessors and lessee entered into a lease of 10 contiguous lots in downtown Denver for a period of five years at a rental of $400 per month. The lease contained three provisions which are of primary concern in this appeal:
"It is mutually agreed that if after the expiration of this lease, the lessee shall remain in possession of said premises, and continue to pay rent without written agreement as to such possession, then such lessee shall be regarded as a tenant from month to month at a monthly rental, payable in advance, equivalent to the last monthly installment hereunder, and subject to all the terms and provisions of this lease." [The "holding over"]
"(Owner [lessors] agrees and hereby acknowledges that lessee shall have first right of refusal to any acceptable offer for sale of the herein described property)." [The "right of refusal"]
"It is further agreed that the lessee has the option to renew this lease for an additional term of five years under the same terms and conditions." [The "renewal option"]
The holding over provision was contained in the printed form lease; the right of refusal and the renewal option provisions were in typewriting. This lease was never recorded.
The lessee remained in possession and continued to pay the rent without written agreement after the end of the five year term of the lease (May 1, 1973), but there was no oral or written notification to, or even any conversation with, the lessors concerning any extension or renewal of the lease either before or after the expiration of the original lease term. In October 1973, at the request of the lessors, the lessee agreed, effective November 1, to increase the monthly rental to $550. On July 26, 1974, without any notice to or knowledge of the lessee, the lessors sold these and four other lots to the buyers for $90,000, $60,000 of which was allocable to these 10 lots. The terms were two-thirds cash and the other one-third carried back by the lessors for seven months at 8½% per annum interest on a subordinated second deed of trust. The buyers knew the lessee was in possession, had been advised by the lessors that there was no lease, and had not checked with the lessee prior to purchasing the property. On August 5, lessee learned about the sale and protested to the lessors and the buyers. On about August 15, the buyers notified the lessee that the rent would be $1,000 per month and offered a *110 one year lease. The lessee continued to pay $550 rent to the lessors and later into the registry of the court.
In October 1974, the lessee commenced an action against the lessors and buyers for specific performance of the right of refusal or, in the alternative, for money damages from the lessors. The buyers sued the lessee for unlawful detainer. Both actions were consolidated for trial to the court.
At the trial, the president of the lessee testified that, had the lessee been offered the property, including the other four lots, it would have purchased them for the $90,000 price the Cohens paid, or it would have been willing to pay pro rata for the 10 lots. He stated that at that time it didn't have the cash and its bank refused to make a loan commitment, but it did get a loan commitment from two other local banks.
The trial court concluded "that by their very conduct" lessors and lessee "had mutually understood that they would be on a landlord and tenant basis until May 1, 1978, at a monthly rental of $550" and that buyers "had constructive notice of said tenancy, and upon purchase of the property took the same subject thereto." Noting that the right of refusal provision was set out in parentheses, "which indicates . . . that the parties considered it a separate provision apart from the standard landlord and tenant terms," the court concluded that "the leasing is one contract and the `first right of refusal' is another, and that under the facts in this case and under the lease in question the tenancy was continued, but said tenancy did not carry with it the `first right of refusal.'" Accordingly, the court ordered that the lessee was entitled to possession of the property as a tenant until May 1, 1978, denied lessee's prayer for specific performance, declared that the buyers were the owners subject to the tenancy, directed that all rent money on deposit in the registry of the court be disbursed to the buyers and that all subsequent rent payments be made direct to them, and dismissed all claims not otherwise disposed of.

I.
Where a lease contains no provision requiring the lessee to give notice of its election to extend the lease, no notice is necessary; continuing in possession and tendering the monthly rental sufficiently indicates a lessee's desire to extend the lease for the additional term. Nicklis v. Nakano, 118 Colo. 317, 195 P.2d 723 (1948). See Schaeffer v. Bilger, 186 Md. 1, 45 A.2d 775 (1946); Sisco v. Rotenberg, 104 So.2d 365 (Fla.1958). Therefore, the trial court was correct in concluding that the renewal option here had been exercised and that the lessee was entitled to possession of the property for the five year additional term.
However, the crucial issue is whether the right of refusal continued in force upon the renewal of the lease, as contended by the lessee, or whether the right was a separate contract, not an integral part of the lease, and did not survive after the original lease term, as the trial court held. In deciding this issue, we are not bound by the trial court's interpretation of the written document. Justice v. Stanley Aviation Corp., 35 Colo.App. 1, 530 P.2d 984 (1974); Bator v. Mines Development Inc., 32 Colo. App. 320, 513 P.2d 220 (1973).
We see no significance in the fact that the right of refusal provision was enclosed by parentheses. We consider the clause "under the same terms and conditions" in the renewal option to be controlling in determining the practical legal effect of the language in the lease.
There is a split of authority over the question of whether a lease and a purchase or right of refusal option are independent and severable covenants so that an extension or renewal of the lease does not carry the option with it, Pettit v. Tourison, 283 Pa. 529, 129 A. 587 (1925); Carter v. Frakes, 303 Ky. 244, 197 S.W.2d 436 (1946), or whether the leasehold provisions and the option are inseparable and indivisible provisions of the lease and therefore the option is extended when the lease is extended or renewed. Meadow Heights Country Club v. Hinckley, 229 Mich. 291, 201 N.W. 190 (1924). But, where the lease itself provides *111 that extension or renewal of the lease is to be on "the same terms and conditions" as those in the original lease, the great weight of authority is that an extension or renewal extends the option also. See, e. g., Ardito v. Howell, 29 Del.Ch. 467, 51 A.2d 859 (1947); Sisco v. Rotenberg, supra; Schaeffer v. Bilger, supra; Masset v. Ruh, 235 N.Y. 462, 139 N.E. 574 (1923); Volunteers of America v. Spring, 27 Ohio App. 229, 161 N.E. 215 (1927); Annot., 15 A.L.R.3d 470.
We adopt the majority approach and, therefore, conclude that the right of refusal continued in force upon the renewal of the lease. See Roemer v. Sinclair Refining Co., 151 Colo. 401, 380 P.2d 56 (1963).

II.
The trial court correctly concluded that the buyers had constructive notice of lessee's tenancy and, upon purchase, took the property subject thereto. Cook v. Hargis, 164 Colo. 368, 435 P.2d 385 (1967). The statute relating to the recording of instruments and to the validity of unrecorded instruments, § 38-35-109, C.R.S.1973, in referring to those persons "such as have notice" of "instruments . . . affecting the title to real property," means constructive or implied notice as well as actual notice. See McLure v. Koen, 25 Colo. 284, 53 P. 1058 (1898); Shamrock Land & Cattle Co. v. Hagen, 30 Colo.App. 127, 489 P.2d 607 (1971).
The buyers were told by the lessors that there was no lease. However, that does not relieve the buyers. They must inquire of the possessor, or they are held to have taken subject to whatever rights proper inquiry would have disclosed. Keck v. Brookfield, 2 Ariz.App. 424, 409 P.2d 583 (1966). This includes the lessee's right of refusal, which was an integral part of its lease.
The offer should have been made, and the lessee should have been given a reasonable time within which to decide and to arrange for the purchase. Having asserted its rights within a reasonable time after learning about the sale, the lessee is entitled to specific performance. Because the 10 lots in question are adjacent to five lots already owned by the lessee and because all 15 lots are needed in order to operate its trucking business, these lots are unique and money damages would not be an adequate substitute. Prosser v. Schmidt, 118 Colo. 502, 197 P.2d 318 (1948).
Lessors contend that specific performance might be proper against the buyers but not against the lessors, because the property has already been deeded to the buyers. In support of that contention, they cite Brown v. Lapham, 22 Colo. 264, 44 P. 504 (1896), and Bennett v. Moring, 33 Colo. App. 390, 522 P.2d 741 (1974). The buyers argue that any relief in this case should be directed against the lessors for breach of the right of refusal. We do not agree. Since the buyers were not bona fide purchasers and took subject to the refusal rights in the lease, it is proper to grant relief against both parties to the extent necessary to afford relief to the injured lessee. See Chandler Trailer Convoy, Inc. v. Rocky Mountain Mobile Home Towing Services, Inc., Colo.App., 552 P.2d 522 (1976).
The buyers point out that the only offer from the lessors, and the offer which they accepted, was for the sale of 14 lots, and that there never was an offer to sell only the 10 lots under the lease. From this they claim that there was no "acceptable offer for sale" of the leased property. In support of that contention, they cite Aden v. Estate of Hathaway, 162 Colo. 311, 427 P.2d 333 (1967).
In Aden, the lessor owned a substantially larger tract of land adjacent to the leased property. The proposed sale was made contingent on the lessees waiving their refusal right. The deal collapsed when the lessees refused to waive. Aden is authority for the rule that "`the holder of the option of first refusal on a portion only of a larger tract may not obtain specific performance of his option so as to require conveyance to him of the whole property the owner desires to sell. . . Nor may the property owner, by the acceptance of an offer to sell the whole, be compelled by judicial decree to dispose of the optioned part separately from the property as a whole.'"
*112 However, Aden has no application here. In the instant case, the 14 lots were not in a single tract; ten lots were in one tract and four in another. The two tracts were leased to different lessees, and were separated by a two-lot warehouse owned by a third party. The buyers, who owned property across the street, acquired the property for investment income purposes and not for their own use. There is no problem in apportioning the purchase price between the four and the 10 lot tracts. An owner of property cannot defeat a right of refusal simply by selling the optioned property with other properties which he may own. See Denco, Inc. v. Belk, 97 So.2d 261 (Fla.1957); L. E. Wallach, Inc. v. Toll, 381 Pa. 423, 113 A.2d 258 (1955); Brenner v. Duncan, 318 Mich. 1, 27 N.W.2d 320 (1947). To deny specific performance here would be to defeat the entire purpose of the right of refusal, the protection of the lessee.
The judgment is reversed and the cause is remanded to the trial court with directions to enter a decree of specific performance in favor of plaintiff and against the defendants, and for further proceedings not inconsistent with the views herein expressed.
PIERCE and RULAND, JJ., concur.