**PANTRY PRIDE ENTERPRISES, INC., Plaintiff,**

v.

**The STOP & SHOP COMPANIES, INC., Defendant.**

Civ.A. No. 85–252–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 10, 1986.

Charles F. Wittoefft, Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, Va., for plaintiff.

William E. Rachels, Jr., Willcox & Savage, P.C., Norfolk, Va., for defendant.

## ORDER

CLARKE, District Judge.

This matter has been submitted to the Court for final decision on stipulated facts, the parties agreeing that the case can be decided on the merits on the basis of the file as now constituted. Briefs have been submitted by both parties, and oral argument heard on December 30, 1985. Accordingly, this matter is ripe for disposition.

The relevant stipulated facts can be summarized as follows. The plaintiff, Pantry Pride Enterprises, Inc. ("Pantry Pride") is the sublessee of commercial property located at 201 East Little Creek Road in Norfolk, Virginia ("Little Creek premises"). The defendant, The Stop & Shop Companies, Inc. ("Stop & Shop"), is the sublessor of this property, and also occupies commercial premises adjoining the property that is the subject of the sublease. Under section

3.13(a) of the sublease, the subleasee is permitted to assign or further sublet its interest in the premises. The dispute involves section 3.13(b) of the sublease, under which the sublessor is given a right of first refusal with regard to any proposed sublease under section 3.13(a). Section 3.13(b) provides in pertinent part that:

[p]rior to making any such assignment or sublease, *[Sub]Lessee [Pantry Pride] shall first notify [Sub]Lessor [Stop & Shop] of the name of the proposed assignee or sublessee and all of the terms and conditions of the proposed assignment or sublease.* [Stop & Shop] *shall have the right,* by written notice sent within thirty (30) days after its receipt of that notice from [Pantry Pride], *to accept an assignment of [Pantry Pride's] interest in this Sublease* or to sublet from [Pantry Pride] the Demised Premises *upon the terms and conditions set forth in [Pantry Pride's] said notice* and, should [Stop & Shop] exercise its election to do so, within fifteen (15) days following the sending of such notice by [Stop & Shop], [Stop & Shop] and [Pantry Pride] shall execute instruments containing those terms and effecting the assignment or sublease from [Pantry Pride] to [Stop & Shop].

(Ex. 1 at 18–19) (emphasis added).

In October of 1984, Pantry Pride agreed to sell to Richmond, Inc. ("Richmond") its entire leasehold and property interests at twenty retail locations owned or leased by Pantry Pride in Virginia, including the premises covered by the sublease. Of the total purchase price of $9.8 million, $571,000 was allocated to the leasehold and equipment at the Little Creek premises. Richmond and Pantry Pride further agreed to allocate the purchase price assigned each retail location between equipment and leasehold. Seventy-five percent of the purchase price of each location was allocated to equipment, twenty-five percent to leasehold, resulting in allocations of $428,250 and $142,750 respectively for the equipment and leasehold at the Little Creek premises.

In February of 1985, Pantry Pride notified Stop & Shop of its intention to assign its interest in the sublease to Richmond in the manner described above. In March of 1985, and within the period allowed in section 3.13(b), Stop & Shop notified Pantry Pride of its intent to exercise its right to accept an assignment of Pantry Pride's interest in the sublease by agreeing to pay Pantry Pride $142,750, the amount allocated by Pantry Pride and Richmond for the value of the leasehold. Stop & Shop also notified Pantry Pride that Pantry Pride had the right to remove any machines or equipment which it had installed at the premises. (Ex. 9).

Pantry Pride then notified Stop & Shop that it rejected Stop & Shop's exercise of its right of first refusal because Stop & Shop had not accepted the "precise terms and conditions" on which Pantry Pride was prepared to assign its interest to Richmond. (Ex. 10). In response, Stop & Shop claimed that Pantry Pride was in default if it failed to honor the right of first refusal. (Ex. 12). Pantry Pride thereafter brought this action for declaratory judgment, seeking to resolve the rights of the parties as they relate to the proposed assignment. Although no one has occupied the premises since November of 1984, Pantry Pride has continued to pay Stop & Shop the rent due under the sublease.

█ Pantry Pride contends that Stop & Shop could only exercise its right of first refusal by accepting all the terms of the proposed sublease; in other words, by agreeing to purchase Pantry Pride's interest in both leasehold and equipment for $571,000. This position, however, is wholly unsupported by the language of the sublease and by the relevant case law. Under the terms of section 3.13(b) of the sublease, the right of first refusal relates to assignments of the lessee's (Pantry Pride) "interest in the sublease," (Ex. 1), not to equipment installed on the premises. *See, e.g.* Ex. 1 at § 3.14(b) (equipment and fixtures referred to as "Lessee's Equipment"). Pantry Pride knew when it signed the sublease that it would be putting equipment in

the store, but chose not to involve fixtures in the scope of the first refusal clause.

It is universally recognized that the holder of a right of first refusal cannot be compelled to purchase more property than is subject to the right of first refusal, or else forfeit its first refusal rights. *Gyurkey v. Babler*, 103 Idaho 663, 667, 651 P.2d 928, 932 (1982) (and cases cited therein); *Guaclides v. Kruse*, 67 N.J.Super. 348, 359, 170 A.2d 488, 495 (1961); *see also* 34 A.L.R.4th 1217 (1984); 170 A.L.R. 1068 (1947). On the other hand, *First National Exchange Bank v. Roanoke Oil Co.*, 169 Va. 99, 192 S.E. 764 (1937), cited by plaintiff in support of its position, is simply inapposite. There the holder of a right of first refusal accepted a package offer to purchase properties in addition to those covered by the lease. When the other party balked, the holder of the right of first refusal sought and received specific performance. *Id.* at 117, 192 S.E. at 771. The court there did not reach the question of whether the holder of first refusal rights loses those rights if it does not accept such a package.

The Court is not aware of any case law to the contrary. The rationale behind the rule is simple. To hold otherwise would allow the subleasee in this case to render the sublessors right of first refusal a "nullity" merely by adding additional property to the property covered by the agreement. *Straley v. Osborne*, 262 Md. 514, 523, 278 A.2d 64, 69 (1971). Thus, it is clear that Stop & Shop could not be required to purchase both Pantry Pride's leasehold interest and equipment or else lose its first refusal rights.

The only real issue before the Court, then, is the remedy available to Stop & Shop. Stop & Shop seeks an order of specific performance compelling Pantry Pride to convey its interest in the leasehold for $142,750. Pantry Pride, on the other hand, contends that the only relief Stop & Shop could be entitled to is an injunction preventing the sale or assignment of Pantry Pride's leasehold interest to Richmond.

This action is brought under the Court's diversity jurisdiction, 28 U.S.C. § 1332, and therefore requires the application of Virginia substantive law. *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The issue before the Court has not yet been addressed by the Virginia Supreme Court, and there is a clear split among the jurisdiction as to the appropriateness of specific performance where the holder of a right of first refusal seeks to exercise that right in relation to a piece of land that is being sold as part of a larger tract of land in a package deal. *See* 34 A.L.R. 4th 1217 (1984). A careful reading of the cases from the other jurisdictions, however, finds most of them to be inapplicable to the case at hand.

In all of the cases found by the Court, the interest in land, which was the interest protected by the right of first refusal, was being sold or assigned in connection with interest in other land. Here, however, the proposed assignment linked an interest in land with equipment. Further, in all but one of these cases the relevant interest in land was being sold or assigned with other land contiguous to the land in question. In contiguous land cases, a Court might legitimately be wary about enforcing specific performance. In such cases, it may be incorrect to assume that every acre is of equal value, or that the larger property would be salable after the land protected by the first refusal option is excluded from consideration. *See Guaclides*, 67 N.J.Super. at 359, 170 A.2d at 494.

These problems are simply not present when the leasehold interest is lumped together in a package deal with equipment. Equipment, by its nature, is capable of being removed and sold separately. Indeed, the terms of the lease make it clear that Pantry Pride may remove any fixtures or equipment installed by Pantry Pride upon the termination of the sublease or at any time prior to that. (Ex. 1 at § 3.14(b) ). Protecting Stop & Shop's bargained for right of first refusal by granting specific performance can be accomplished under these circumstances at much less prejudice to Pantry Pride than is possible where the

package deal involves one large tract of land.

■ Thus, the only scenario that is analagous to the case at hand is that where the interest in land protected by a right of first refusal is included in a package deal with other non-contiguous land. In the only case the Court is aware of that involves non-contiguous land, the court granted specific performance to the holder of the first refusal rights. *Thomas & Son Transfer Line, Inc. v. Kenyon, Inc.*, 40 Colo.App. 150, 574 P.2d 107 (1977), *aff'd sub nom, Cohen v. Thomas & Son Transfer Line, Inc.*, 196 Colo. 386, 586 P.2d 39 (1978). In so doing, the court distinguished an earlier Colorado case, *Aden v. Estate of Hathaway*, 162 Colo. 311, 427 P.2d 333 (1967), which held specific performance to be inappropriate where the land protected by the right of first refusal was sold as part of a larger tract of land. The court stated:

> *Aden* has no application here. In the instant case, the 14 lots were not in a single tract; ten lots were in one tract and four in another..... There is no problem in apportioning the purchase price between the four and the 10 lot tracts. An owner of property cannot defeat a right of refusal simply by selling the optioned property with other properties which he may own. [citations omitted] To deny specific performance here would be to defeat the entire purpose of the right of refusal, the protection of the lessee.

40 Colo.App. at 155, 574 P.2d at 112. There, as here, it was argued that there was never an offer to sell only the property covered by the right of first refusal. *Id.*, 574 P.2d at 111. The Court rejected that argument. We similarly conclude that the intention to sell leasehold interest and equipment where the leasehold interest is protected by a right of first refusal, can be taken as the intention to sell the leasehold interest alone. *See Berry-Iverson Co. of North Dakota v. Johnson*, 242 N.W.2d 126, 134 (N.D.1976).

Having determined that the remedy of specific performance is appropriate here, the Court must now determine whether Stop & Shop should be allowed to purchase the leasehold interest for the allocated amount of $142,750. Pantry Pride argues that it would be inequitable for the Court to compel it to sell the leasehold interest for this amount as Pantry Pride and Richmond's allocation of the purchase price between equipment and leasehold was done for tax reasons and without regard to fair market value. *See* Paragraph 11 of October 25, 1985 Order on Final Pre-Trial Conference.

In some of the cases where specific performance was granted, courts were placed in the difficult situation of having to assign values to the pieces of property involved in a package sale. Some courts have resolved the matter by assigning a proportionate amount of the total price to the property covered by the right of first refusal on the basis of its relation to the total square footage of the property, *e.g., Berry-Iverson*, 242 N.W.2d at 135–36, while others have attempted to ascertain the relative fair market value of the properties, *e.g., Brenner v. Duncan*, 318 Mich. 1, 27 N.W.2d 320, 322–23 (1947).

■ Neither of these methods, however, is preferable to the parties' own allocation of value to the pieces of property. Here Pantry Pride and Richmond freely agreed to the allocation now complained of. Having made its own bed, Pantry Pride will have to lie in it. Pantry Pride says that the allocations were made for the benefit of Richmond, but it is generally the case that tax considerations such as these are taken into account in determining the sales price of the property involved. Moreover, to allow Pantry Pride to escape from this one unfavorable aspect of the transaction it helped structure, would jeopardize the entire transaction. *See Commissioner v. Nat. Alfalfa Dehydrating*, 417 U.S. 134, 94 S.Ct. 2129, 40 L.Ed.2d 717 (1974) (taxpayer must accept unfavorable tax consequences of chosen transaction form, whether contemplated or not); *Furman v. United States*, 602 F.Supp. 444, 455 (D.S.C.1984). Pantry Pride presumably benefitted from

these allocations and cannot now fairly challenge them.

Accordingly, the Court holds that Stop & Shop, by virtue of its contractual right of first refusal, is entitled to specific performance of Pantry Pride's offer to sell its leasehold interest in the Little Creek premises for $142,750.

The defendant shall prepare the appropriate documents necessary for the transfer of the leasehold interest and shall present them to the plaintiff who shall, unless there is some objection as to form, execute them forthwith and deliver them to defendant upon receipt of proper payment.

IT IS SO ORDERED.