MARK LANDA, ET AL.

V.

CENTURY 21 SIMMONS & CO., INC., ET AL.

Record No. 870122

MARK LANDA, ET AL.

V.

CENTURY 21 SIMMONS & CO., INC., ET AL.

Record No. 871030

March 3, 1989

Present: All the Justices

*Denis C. Englisby (Englisby, Barnes & Allen, on brief), for appellants (Record Nos. 870122 and 871030)

*Frank A. Porter (Bernard A. Gill, Jr.,* on brief), for appellee Century 21 Simmons & Company, Inc. (Record Nos. 870122 and 871030).

*Oliver D. Rudy (James E. Evans; Rudy, Keown, Evans & Mikula,* on brief), for appellee Zane Davis (Record Nos. 870122 and 871030).

No brief or argument for appellee Clinton F. Peterson, Executor of the Estate of Mary B. Baker (Record Nos. 870122 and 871030).

THOMAS, J., delivered the opinion of the Court.

These appeals concern a dispute over a 17-acre tract of land located in Chesterfield County. The land is part of the estate of Mary Belle Baker, deceased. Her executor, Clinton F. Peterson, entered into two separate contracts concerning this one tract of land. The first contract was with Mark and Francine Landa (the Landas). The second contract was with Zane G. Davis.

The Landas and Davis filed separate suits against Peterson demanding that he convey the 17-acre tract. On Peterson's motion, the two cases were "consolidated for trial." The matter was tried by the court sitting without a jury.

At the conclusion of an *ore tenus* hearing, the trial court ruled that the Landas were not entitled to specific performance because the contract on which they relied was uncertain and indefinite. The trial court dismissed their bill of complaint. They appealed this adverse ruling and that appeal is the subject of Record No. 870122. Thereafter, Davis moved the trial court to enter an order granting him specific performance regarding the 17 acres; this order was entered over the Landas' objection. The Landas appealed; that appeal is the subject of Record No. 871030.

I

The first issue is whether the two proceedings were truly consolidated in the trial court, thus turning the two proceedings into one or whether the two proceedings were simply tried together, thus leaving each proceeding independent of the other. The parties submit that the resolution of this question has important consequences for the proper disposition of these appeals.

If the two proceedings were consolidated, then the Landas' appeal of the order which dismissed them from the suit brought the

entire case under the power of this Court and deprived the trial court of any further power to act during the pendency of the appeal. This means that if there was a consolidation, then the trial court's order granting specific performance to Davis was a nullity.

On the other hand, if the two proceedings were merely tried together, they retained their separate identities. This means that the Landas, who were not parties to the Davis suit, would have no basis upon which to complain about the trial court's decision to award specific performance to Davis. Consequently, we would have to dismiss the appeal in Record No. 871030 because there would be no aggrieved party.

The facts regarding consolidation are as follows: On March 4, 1986, the Landas filed a bill of complaint against Century 21 Simmons & Co., Inc. (Century 21), and against Peterson as executor of the Baker estate. The Landas alleged that the defendants had entered into a contract which provided that the Landas were to have "first option on remaining tract. Notice must be in writing to 3018 Boulevard," Colonial Heights. The Landas alleged further that the defendants breached their contract "by obtaining a contract on the sale of the remaining tract without giving the first option to the plaintiffs as required by the contract." The Landas demanded specific performance.

On May 21, 1986, Davis filed a bill of complaint against Peterson, both individually and in his role as executor of the Baker estate. Davis also sued Century 21. Davis alleged, among other things, that by contract dated October 8, 1985, Peterson agreed to sell him a "parcel of land containing 17 acres, more or less." Davis alleged that despite the terms of the contract, Peterson refused to convey the property. Davis demanded specific performance.

Peterson moved that the two proceedings be consolidated for trial because both suits requested specific performance and both suits involved "the same 17 acre parcel of real estate." The trial court granted the motion, ordering that "the two above styled chancery matters be consolidated for trial." Throughout the trial court proceedings, the suits retained their separate chancery numbers. At no point were they ordered consolidated in the sense of creating one case.

In our opinion, the two trial court proceedings were heard together as opposed to being truly consolidated. Thus, the two suits retained their separate identities.

## II

Because we have held that the two suits were not converted into one, we must hold further that the Landas had no right to appeal the judgment in *Davis* v. *Peterson*, Record No. 871030. The appeal in that suit is dismissed for lack of an aggrieved party.

We may still adjudicate the Landas' claim, however. We have before us in Record No. 870122 the seller and the Landas who claim the disputed 17-acre tract. We will proceed to adjudicate the rights of those parties, the decision in *Davis* v. *Peterson* notwithstanding.*

## III

We turn now to the question whether the trial court erred in ruling that the contract provision on which the Landas relied was too indefinite and uncertain to be specifically enforced by a court of equity. In order properly to resolve this issue, we must — upon familiar principles — review the facts in the light most favorable to the Landas.

Peterson enlisted the aid of his son-in-law, Cecil W. Simmons of Century 21 to help sell land owned by the Baker estate. Simmons contacted the Landas about purchasing all of the Baker land. The Landas expressed an interest but made clear they had certain financial limitations. Simmons suggested that the Landas execute a contract to purchase a specific amount of land which they could afford and take a first option on the remaining land. According to Mark Landa, Simmons said, "well, why don't we work it, we will cut a piece of it out right now, give you a first option on that piece, and then you think about it, see what you want to do, and then if anybody else comes up and wants to buy it, I will relay this option to you at this time."

Based on Simmons' recommendation, on July 31, 1985, the Landas entered into a contract with Peterson, prepared by Simmons. That contract was to purchase approximately 70 acres of land from the Baker estate. Simmons added in his own handwriting the following language which was also part of the contract: "Purchaser to have first option on remaining tract. Notice must be in writing to 3018 Boulevard, Col. Hgts." The testimony was uncontradicted that the term "remaining tract" referred to the 17

---

* If a single order had been entered resolving the claims of the various parties, the difficulties resulting from dual appeals might have been avoided.

acres, more or less, situated near the 70-acre tract which the Landas had agreed to purchase. Further, there is no dispute that the address set forth in the provision was the Landas' business address.

The sale of the 70 acres closed on October 14, 1985. Thereafter, the Landas learned that Peterson had entered into a contract with a third party to sell the 17-acre tract on which they claimed a "first option."

The Landas retained counsel who filed suit on March 4, 1986, claiming that the "first option" contract had been breached. In response to their bill of complaint, the Landas received a letter from Peterson dated "March, 1986." That letter stated as follows:

> This is your written notice of another offer to purchase the remaining acreage (17 + -) of the Mary Baker Estate. The offer is $100,000 for the remainder. Closing is 15 days after obtaining M-1 zoning and payment effectively is cash based on a short term development plan.
>
> Buyer agrees to pay all expenses of procuring industrial zoning.
>
> If I am not contacted in writing within five days the property will be conveyed under this offer and any other of the estate choosing.

The Landas' counsel responded with a letter dated March 20, 1986, requesting a copy of the offer.

By letter dated April 10, 1986, a copy of a contract to purchase was forwarded to the Landas' counsel. This document was not merely an offer. It was a contract of purchase dated October 8, 1985, and signed by the purchaser, Zane Davis and the seller, Peterson. On April 14, 1986, the Landas' counsel notified Peterson's counsel that the Landas had decided to exercise their first option regarding the October 8, 1985 contract.

The April 14 letter from the Landas' counsel was followed by another letter dated April 25, 1986. In that letter the Landas tendered a $5,000 deposit to show "good faith" even though the Davis contract called for only a $1,000 deposit. Thereafter, in a letter dated May 15, 1986, the Landas expressly waived several of the conditions that Davis had required in his contract. The effect of these waivers was to make it easier for Peterson to convey to the

Landas. After the May 15 letter, the Landas got no further response from Peterson. Davis filed suit on May 21, 1986.

Mark Landa testified that he was never told by anyone that there was a set time in which his "first option" had to be exercised. He said that at the closing on the 70-acre tract he told Simmons that though he could not purchase all the Baker land at that moment, he was still interested in it.

Simmons admitted that he did not advise the Landas that the "first option" would terminate at any particular time. He also admitted that at the October 14 closing with the Landas, he did not advise them of the October 8 contract with Davis. Simmons acknowledged that the "first option" provision meant that the seller would have to give the Landas notice before the Landas were required to act.

■ When the Landas rested, the trial court ruled that the "first option" was incomplete and uncertain. This was error. On appeal, Davis contends the trial court's decision was correct because the "first option" failed to define the remaining tract; failed to specify its own duration; failed to specify whether it survived settlement; and failed to set a price.

The trial court's ruling may have been correct had the contract provision been an "option," but it was not. As the Landas urge, the provision gave them a right of first refusal with regard to offers made to the seller.

■ We discussed the difference between an option and a right of first refusal in *Cities Service v. Estes*, 208 Va. 44, 155 S.E.2d 59 (1967). There we wrote that

[a] right of first refusal is distinguished from an absolute option in that the former does not entitle the [buyer] to compel an unwilling owner to sell. Instead it requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the right of first refusal.

*Id.* at 47, 155 S.E.2d at 62. We noted further that a right of first refusal is inserted in a contract for the benefit of the person who is given the right and that it must, therefore, be interpreted with that purpose in mind.

The distinction between an option and a right of first refusal is discussed at length in several treatises on contracts:

While options and the so-called "right of first refusal" are sometimes confused, there is a clear and classic distinction: The option compels performance within the time limit specified, or if none is mentioned, then within a reasonable time, whereas the right of first refusal has no binding effect unless the offerer decides to sell.

The right of first refusal, or first right to buy, is not a true option but is a valuable prerogative. It limits the right of the owner to dispose freely of his property by compelling him to offer it first to the party who has the first right to buy.

11 S. Williston, *Williston on Contracts* § 1441A (3d ed. 1968).

Professor Corbin wrote that an option contract is one in which a seller makes an irrevocable offer to sell on specified terms and which creates in a buyer a power of acceptance. 1A A. Corbin, *Corbin on Contracts* § 261A (1963) (Corbin). He says that a right of first refusal differs in that it is a right that a buyer shall be given an option to purchase before an owner makes a contract to sell to another. Corbin § 261. Corbin adds that where a right of first refusal is involved, when an owner receives an offer the owner cannot accept that offer without first offering it to the holder of the right of refusal "on the same terms." If he does not do this, the owner is in breach. *Id.* The nature of a right of refusal makes it unnecessary for the terms of the offer that the owner will submit to the holder of the right to be known in advance. *Id.*

One of. Davis' arguments in this appeal is that the contract provision relied on by the Landas is not a right of first refusal because it uses the term "first option." Corbin makes clear that the meaning of such a provision can almost never be determined from what it calls itself. According to Corbin, a provision may create a right of first refusal,

although the Right that it creates may be described in other terms. Such terms are "First Right to Buy," "Right of Preemption," "First Privilege to Purchase," "First Right and Option." In no case are the legal relations of [an owner] and [a buyer] determinable from the name alone. In all cases, interpretation requires knowledge of the entire context, context of facts as well as context of words.

*Id.*

Corbin points out that the word "first" has special significance in interpreting contract provisions to decide whether an option or a right of refusal is intended: "the limiting word 'First' indicates that there is no intention to create a power of acceptance in the promisee; instead it indicates that the promisee shall be the first party to be given such a power." *Id.* § 261A.

■ The language the trial court had under review was this: "Purchaser to have first option on remaining tract. Notice must be in writing to 3018 Boulevard, Col. Hgts." In light of the foregoing principles, it is plain that this language did not create an option. It does not commit the seller to an irrevocable offer to sell under certain circumstances such that a power of acceptance was left in the Landas. Further, the terms used are contrary to what would be called for in an option. In that situation, the notice would run from the Landas to the seller, that is, the Landas would be the ones required to say "we give you notice that we are exercising our option." Here, the sellers are the ones required to give notice. We conclude that the language does not and was not intended to create an option.

In oral argument, Davis' counsel agreed that the language did not create an option but argued that the trial court properly refused to grant specific performance because no one could tell what the language meant. He argued further that because the language was unclear, the trial court took evidence and still concluded that it did not know what the provision meant.

■ Mark Landa testified that Simmons came up with the idea to allow the Landas to purchase as much land as they could afford while preserving a right to purchase other land in the future should another buyer become interested in the property. Further, the term "first" is used in the provision. As we quoted from Corbin, that term has special significance in this area of law because it suggests that when the seller decides to sell, it will be to the person to whom he has said he would turn "first."

Moreover, the parties placed a practical construction upon the provision by their conduct. When the Landas filed suit, Peterson sent a letter which, by its terms, gave the Landas a right to purchase or to refuse the purchase in face of an offer already made to the seller. (Of course, even when that March 1986 letter was sent, the seller was already in breach of the provision because he had accepted Davis' offer.) Thereafter, the seller proceeded as if a right of first refusal was involved by providing the Landas

with a copy of the Davis contract. Then in May 1986, days before Davis filed suit, all communications ceased.

■ Based on the testimony of the witnesses, the language used in the provision, and the conduct of the parties, we hold that the provision was a right of first refusal. Consequently, we also hold that it was error for the trial court to rule that the provision was uncertain and indefinite. This is so because the terms of the contract to be specifically enforced are determined from the offer whose terms the holder of the right of refusal agrees to meet.

## IV

In its brief, Century 21 advanced an additional rationale to support the trial court's denial of specific performance to the Landas. Century 21 submits that the Davis contract concerned not only the 17-acre tract owned by the Baker estate, but also a 1.9-acre parcel owned by Peterson in his individual capacity. Century 21 argues that because the Landas did not have any rights regarding the 1.9-acre parcel, they cannot exercise their right of first refusal concerning the 17-acre tract.

■ Century 21's contention is plainly wrong. If this were the law, a person in Peterson's position could always defeat a right of first refusal by contracting with a purchaser who agreed to buy slightly more land than covered by the right of first refusal. A similar issue was discussed in *Pantry Pride Enterprises* v. *Stop & Shop Companies*, 630 F. Supp. 637 (E.D. Va. 1986), a case involving a right of first refusal regarding a sublease. There, the district court wrote: "It is universally recognized that the holder of a right of first refusal cannot be compelled to purchase more property than is subject to the right of first refusal or else forfeit its first refusal rights." Id. at 639. We hold that the Landas are entitled to exercise their right of first refusal with regard to the 17-acre tract despite the fact that Peterson contracted with Davis to sell the 17-acre tract along with a separate 1.9-acre parcel.

## V

■ Several collateral issues must also be resolved. First, Davis contends that whatever rights were conferred by the provision in question, those rights ended when the Landas accepted the deed for 70 acres. The general argument is that the contract merges into the deed. Davis misunderstands the principle. The contract

concerned a 70-acre tract *and* "the remaining tract." The deed related only to the 70-acre tract. Everything in the contract concerned with or related to the 70-acre tract merged into the deed because that portion of the contract was executed by the delivery of the deed. The portion of the contract concerning the "remaining tract" remained executory and survived the deed. *See Oliver Refining* v. *Portsmouth Cotton Oil*, 109 Va. 513, 521, 64 S.E. 56, 59 (1909).

Next, Century 21, the realtor which negotiated both the Landa contract and the Davis contract was sued by both parties. It participated in both appeals by filing an appellee's brief. Yet, no assignment of error concerns Century 21 and no order in the record rules on whether Century 21 is or is not liable to anyone.

On this appeal, Century 21 argues that it cannot be required to provide specific performance because it does not own the land in question. Moreover, it argues that it cannot be liable in damages to either Davis or the Landas. because it acted as agent of a disclosed principal in its dealings with those parties. In our view, these matters are not ripe for decision by this Court. We will leave them for consideration by the trial court on remand.

VI

In light of all the foregoing, we will reverse the trial court's judgment in Record No. 870122 and remand that case to the trial court to take all steps necessary to award specific performance to the Landas of the 17-acre tract here in dispute on the terms and conditions set forth in the Davis contract of October 8, 1985.

Further, we will dismiss the appeal in Record No. 871030 for lack of an aggrieved party.

*Record No. 870122 — Reversed and remanded.*
*Record No. 871030 — Dismissed.*