LARRY L. WINBERG AND JUNE E. WINBERG, HUSBAND AND WIFE, APPELLANTS, V. RYNOLD A. CIMFEL AND PATRICIA H. CIMFEL, HUSBAND AND WIFE, AND MARVIN STERNER AND ESTHER STERNER, HUSBAND AND WIFE, APPELLEES.

532 N.W.2d 35

Filed May 26, 1995.   No. S-93-810.

John O. Sennett, of Sennett and Associates, for appellants.

Larry W. Beucke, of Parker, Grossart, Bahensky & Beucke, and Carlos E. Schaper, of Schaper & Steffens, for appellees.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

CONNOLLY, J.

Larry L. and June E. Winberg filed this equity action against Rynold A. and Patricia H. Cimfel and Marvin and Esther Sterner, requesting specific performance of a right of first

refusal to purchase a certain 276–acre tract of land in Custer County. The district court for Custer County granted the Cimfels' and Sterners' motions for summary judgment. We reverse the judgment and remand the cause for further proceedings because the district court erred in finding that the Winbergs' right of first refusal merged into a subsequent warranty deed conveying a contiguous 4–acre tract of land from the Cimfels to the Winbergs and because the Sterners did not qualify as bona fide purchasers of land.

## I. FACTUAL BACKGROUND

Rynold and Patricia Cimfel purchased a 280–acre farm in Custer County on or about February 21, 1959. On December 4, 1970, the Cimfels entered into a real estate sales agreement with the Winbergs, wherein the Cimfels agreed to convey a 4–acre tract of the 280–acre farm to the Winbergs in exchange for $1,600. The payment schedule in the sales agreement reflects that the Winbergs were to pay the final installment on January 1, 1976. The section of the sales agreement entitled "Special Agreements between the Seller and the Buyer" contained the following language:

> Parties of the first part [the Cimfels] will have first rights to purchase above four acres or any part thereof if parties of the second part [the Winbergs] desire to sell. Parties of the second part will be given first opportunity to purchase remaining 276 acre [sic], more or less, attached and now owned by the parties of the first part if parties of the first part desire to sell.

The Winbergs filed the sales agreement with the register of deeds in Custer County on March 3, 1971. The record reflects that the Winbergs paid off the money owed on the 4–acre tract in a timely fashion. On December 30, 1975, the Cimfels executed and delivered a warranty deed conveying the 4–acre tract to the Winbergs, which the Winbergs filed with the Custer County register of deeds on January 15, 1980. The warranty deed made no mention of the "first rights to purchase" detailed above.

During the week prior to August 17, 1992, Rynold Cimfel received an inquiry from one Arthur Sterner regarding Sterner's

interest in purchasing the 276–acre tract. Cimfel arranged to meet with Sterner in Broken Bow on August 17. At the August 17 meeting, Cimfel quoted a price of $90,000 for the land to Sterner, but the parties did not reach an agreement regarding the sale of the land.

Prior to meeting with Sterner, Cimfel stopped at the Winberg residence and informed June Winberg that the 276–acre tract was for sale. Cimfel testified in his deposition that he believed that he had a "gentleman's agreement" with the Winbergs whereby the Winbergs were to have the first opportunity to buy the 276–acre tract when it became available for purchase. Cimfel did not remember having entered into the written "first rights to purchase" agreement. Cimfel testified that the Winbergs knew that time was of the essence because he told June Winberg that the time for planting winter wheat was nearing. However, Cimfel conceded that he never expressly told the Winbergs that time was of the essence.

On August 20, 1992, the Cimfels received a postcard from the Winbergs stating that the Winbergs were interested in purchasing the 276–acre tract. In the postcard, the Winbergs inquired about the Cimfels' asking price per acre and asked how many acres of the land were pasture. Rynold Cimfel testified that he wrote a letter in response to the Winbergs' postcard the day he received it. The Winbergs received Cimfel's letter on August 22, 1992. In the letter, Cimfel provided a legal description of the land and estimated that it consisted of approximately 280 acres. Cimfel described the soil and instructed the Winbergs to obtain an aerial map of the tract at the Agricultural Stabilization and Conservation Service office in Broken Bow. Finally, Cimfel stated an asking price of $90,000. Cimfel testified, but did not state in the letter, that he expected a response from the Winbergs in 3 to 5 days.

The same day that the Winbergs received the letter from Cimfel, Cimfel received a phone call from Sterner, who informed Cimfel that he had looked at the property again and was interested in purchasing it. Cimfel arranged to meet Sterner at Sterner's residence in Broken Bow on August 25, 1992.

Without prior notice, Cimfel stopped by the Winbergs' residence on the way to his August 25 meeting with Sterner and

found no one home. Cimfel then met with Sterner, and the two parties reached an agreement for the sale of the 276-acre tract to Sterner.

After reaching the agreement with Sterner, Cimfel stopped at Larry Winberg's barbershop. Cimfel informed Winberg that he had just sold the 276-acre tract to Sterner because he assumed that the Winbergs were not interested in purchasing the land, based on the lack of a response to his letter. That same day, the Winbergs sent a letter via certified mail to the Cimfels expressing their interest in purchasing the 276 acres. The Winbergs also applied and received approval for a $90,000 loan, which the Winbergs assert was to be used to purchase the 276 acres.

The Cimfels refused to convey the 276-acre tract to the Winbergs. Subsequently, the Winbergs filed the instant action, naming the Cimfels and the Sterners as defendants, seeking specific performance of the "first rights to purchase" agreement for the 276-acre tract, and asking the court to declare the conveyance between the Cimfels and the Sterners void. The Cimfels answered, and the Sterners answered and counterclaimed, asking the court to quiet title in the Cimfels, subject to the sales agreement with the Sterners.

Each party filed a motion for summary judgment. The district court held that the "first rights to purchase" agreement in the 1970 contract merged into the 1975 warranty deed that conveyed the 4-acre tract to the Winbergs, and that because the "first rights to purchase" agreement was not specifically continued in the deed, it ceased to exist on or about January 1, 1976.

## II. ASSIGNMENTS OF ERROR

The Winbergs contend that the district court erred in sustaining the Cimfels' and the Sterners' motions for summary judgment and in finding that the "first rights to purchase" in the 1970 sales agreement merged into the 1975 warranty deed and therefore did not survive past January 1, 1976.

## III. STANDARD OF REVIEW

An action for specific performance sounds in equity. *Fritsch v. Hilton Land & Cattle Co.*, 245 Neb. 469, 513 N.W.2d 534 (1994). In an appeal of an equity action, an appellate court tries

factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *University Place-Lincoln Assocs. v. Nelsen*, 247 Neb. 761, 530 N.W.2d 241 (1995); *Mischke v. Mischke*, 247 Neb. 752, 530 N.W.2d 235 (1995); *Reikofski v. Bodwell*, 247 Neb. 623, 529 N.W.2d 531 (1995).

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Cimino v. FirsTier Bank*, 247 Neb. 797, 530 N.W.2d 606 (1995); *Tompkins v. Raines*, 247 Neb. 764, 530 N.W.2d 244 (1995); *Roubideaux v. Davenport*, 247 Neb. 746, 530 N.W.2d 232 (1995). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Cimino v. FirsTier Bank, supra*; *Tompkins v. Raines, supra*; *Roubideaux v. Davenport, supra*.

## IV. ANALYSIS

### 1. RIGHT OF FIRST REFUSAL OR OPTION?

The Cimfels and the Sterners contend that an issue in the case at bar is whether the "first rights to purchase" contained in the 1970 sales agreement formed a right of first refusal or an option. We hold that the provision clearly constituted a right of first refusal.

While options and the so-called "right of first refusal" are sometimes confused, there is a clear and classic distinction: The option compels performance within the time limit specified, or if none is mentioned, then within a reasonable time, whereas the right of first refusal has no binding effect unless the offeror decides to sell.

The right of first refusal, or first right to buy, is not a

true option but is a valuable prerogative. It limits the right of the owner to dispose freely of his property by compelling him to offer it first to the party who has the first right to buy. Nor may the owner accept an offer made to him by a third party.

11 Samuel Williston, A Treatise on the Law of Contracts § 1441A at 948–50 (3d ed. 1968).

[T]he word "first" has special significance in interpreting contract provisions to decide whether an option or a right of refusal is intended: "the limiting word 'First' indicates that there is no intention to create a power of acceptance in the promisee; instead it indicates that the promisee shall be the first party to be given such a power."

*Landa v. Century 21 Simmons & Co.*, 237 Va. 374, 382, 377 S.E.2d 416, 420 (1989) (quoting 1A Arthur L. Corbin, Corbin on Contracts § 261A (1963)).

An "option to purchase real estate" is a unilateral contract by which the owner of the property agrees with the holder of the option that he has the right to buy the property according to the terms and conditions of the option. *In re Estate of Michels*, 223 Neb. 286, 389 N.W.2d 285 (1986); *Gleeson v. Frahm*, 211 Neb. 677, 320 N.W.2d 95 (1982). By such an agreement the owner does not sell the land, nor does the owner at the time contract to sell. The owner does, however, agree that the person to whom the option is given shall have the right at his election or option to demand the conveyance in the manner specified. *Gleeson, supra*; *Commuter Developments & Investments, Inc. v. Gramlich*, 203 Neb. 569, 279 N.W.2d 394 (1979).

The language in the 1970 sales agreement in the instant case clearly created a right of first refusal in the Winbergs. The language could not grant an option to purchase real estate because nothing in the agreement indicated that the Winbergs had an absolute right to demand conveyance of the property at any time prior to the Cimfels' decision to sell it. Likewise, the agreement contained no terms or conditions of sale. Instead, the agreement conveyed a right of first refusal, implementing the word "first" to indicate that if the Cimfels decided to sell the 276–acre tract, they were compelled to offer it first to the Winbergs.

## 2. MERGER?

The primary issue raised by the Winbergs is whether the district court correctly held that the right of first refusal in the 1970 real estate sales contract merged into the 1975 warranty deed conveyed by the Cimfels to the Winbergs. We hold that the district court erred in reaching that conclusion.

For a merger to take place, the same parties and the same subject matter must be involved and there must be some showing of intent to merge the two agreements. *The Nebraskans, Inc. v. Homan*, 206 Neb. 749, 294 N.W.2d 879 (1980). As we stated in *Purbaugh v. Jurgensmeier*, 240 Neb. 679, 683, 483 N.W.2d 757, 761-62 (1992):

> "Merger" does not serve to make the contract and the deed one document; it is merely a rule for the resolution of title disputes. " ' " '[U]pon the execution, delivery, and acceptance of an unambiguous deed, such being the final acts of the parties expressing the terms of their agreement with reference to the subject matter, all prior negotiations and agreements are deemed merged therein . . . .' " ' " [Citation omitted.] "[T]hereafter the deed regulates the rights and liabilities of the parties, and evidence of contemporaneous or antecedent agreements between the parties is inadmissible *to vary or contradict the terms of the deed*." (Emphasis supplied.) [Citation omitted.] The doctrine of merger "does not apply to those provisions of the antecedent contract which the parties do not intend to be incorporated in the deed, or which are not necessarily performed or satisfied by the execution and delivery of the stipulated conveyance." [Citation omitted.] For example, "[a] stipulation in a preliminary contract for the sale of real estate, to deliver a deed at a specified time upon a contingency fully performed, does not necessarily merge in a subsequently delivered and accepted deed." [Citation omitted.]

The district court held that the Winbergs' right of first refusal to purchase the 276-acre tract contained in the 1970 sales agreement merged into the warranty deed which conveyed the 4-acre tract to the Winbergs. That holding misconstrues the principle of merger. The 1970 sales agreement concerned both

the conveyance of the 4–acre tract and a right of first refusal to purchase the 276–acre tract. The 1975 warranty deed related only to the conveyance of the 4–acre tract. Everything in the sales agreement related to the 4–acre tract merged into the 1975 warranty deed because that portion of the sales agreement was executed by delivery of the warranty deed. However, the portion of the sales agreement concerning the right of first refusal in the 276–acre tract remained executory and survived the deed. See *Landa v. Century 21 Simmons & Co.*, 237 Va. 374, 377 S.E.2d 416 (1989). See, also, *G.G.A., Inc. v. Leventis*, 773 P.2d 841 (Utah App. 1989) (reaching the same conclusion under a "collateral rights" exception to the merger rule). The district court erroneously applied the doctrine of merger to the Winbergs' right of first refusal.

### 3. ARE THE STERNERS BONA FIDE PURCHASERS?

The Sterners argue that even if the Winbergs' right of first refusal did not merge into the 1975 warranty deed, the Winbergs cannot block the sale of the 276–acre tract to the Sterners because the Sterners are bona fide purchasers.

A "bona fide purchaser" of land is one who purchases for valuable consideration without notice of any suspicious circumstances which would put a prudent person on inquiry. *Kimco Addition v. Lower Platte South N.R.D.*, 232 Neb. 289, 440 N.W.2d 456 (1989); *Mader v. Kallos*, 219 Neb. 579, 365 N.W.2d 408 (1985). The Sterners claim that they had no actual or constructive notice of the Winbergs' right of first refusal when they signed the sales agreement to purchase the 276–acre tract from the Cimfels. Therefore, the Sterners contend that as between the Sterners and the Winbergs, the Sterners should prevail.

Even if we assume that the Sterners did not have actual or constructive notice of the Winbergs' right of first refusal when the Sterners signed the sales contract for the 276–acre tract, the Sterners' argument fails because they did not qualify for protection as bona fide purchasers. To qualify as a bona fide purchaser of land, one must actually have paid the purchase money before he or she received notice of a claim against the land. *Garmire v. Willy*, 36 Neb. 340, 54 N.W. 562 (1893);

*Birdsall v. Cropsey*, 29 Neb. 679, 45 N.W. 921, *modifying* 29 Neb. 672, 44 N.W. 857 (1890). Since the Sterners had not paid the purchase price for the 276-acre tract when they received notice of the Winbergs' right of first refusal, they did not qualify as bona fide purchasers of land.

The decision in *Westpark, Inc. v. Seaton Land Co.*, 225 Md. 433, 171 A.2d 736 (1961) is directly on point. The defendant in *Westpark, Inc.* learned of the plaintiff's right of first refusal to purchase a certain tract of land after the defendant had signed a contract for the sale of the land and tendered a downpayment. The *Westpark, Inc.* court held:

> The general rule is that a purchaser of real estate takes subject to outstanding equitable interests in the property, which are enforceable against him to the same extent they are enforceable against the vendor, where the purchaser is not entitled to protection as a bona fide purchaser . . . and *one who purchases the equitable title to real estate is not protected as a bona fide purchaser where he receives notice of a prior equity before he acquires the legal title . . . or where he receives notice before he has paid all or substantially all of the purchase price. . . .*
>
> In our view of the case before us, [the defendant] is not entitled to protection as a bona fide purchaser of the 5.2 acre tract, since it received notice of [the plaintiff's] equity before paying any except a small portion of the purchase money and before acquiring legal title, and therefore it is bound by that outstanding right.

(Emphasis supplied.) *Id.* at 450-51, 171 A.2d at 743.

It is uncontradicted that the Sterners did not acquire legal title to and did not pay all or substantially all of the purchase price for the 276-acre tract prior to the time the Winbergs recorded notice of their right of first refusal with the Custer County register of deeds on August 31, 1992. We hold that the August 31 recordation should have put the Sterners on notice that suspicious circumstances surrounded the title to the 276-acre tract. Given such notice, the Sterners could not claim that they were bona fide purchasers of land.

## V. CONCLUSION

The Winbergs' right of first refusal in the 276-acre tract

remained in effect because it did not merge into the warranty deed which conveyed the 4–acre tract to the Winbergs. The Sterners are not bona fide purchasers of land because they received notice of the Winbergs' right of first refusal prior to paying the full purchase price for and obtaining legal title to the 276–acre tract. Since factual questions remain regarding whether the Cimfels satisfied their obligations under the right of first refusal and whether the Winbergs accepted the Cimfels' offer to sell the 276–acre tract, we remand the cause to the district court for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.