Argued April 21, resubmitted in banc July 26, reversed and remanded with instructions October 30, reconsideration denied November 28, petition for review denied December 12, 1978, 284 Or 521

## SHELLY ROAD CREST ACRES WATER DISTRICT, *Respondent—Cross-appellant,*
### *v.*
## CITY OF COQUILLE, *Appellant—Cross-respondent.*
### (No. 77-473, CA 9517)

586 P2d 89

Martin E. Stone, Coquille, argued the cause for appellant—cross-respondent. With him on the briefs was Slack, Slack and Jaques, Coquille.

Fred Allen, Coos Bay, argued the cause and filed the briefs for respondent—cross-appellant.

SCHWAB, C. J.

## SCHWAB, C. J.

This is a declaratory judgment proceeding in which the parties seek a determination of their respective rights and duties under a long-term contract for the sale of water from the defendant city to the plaintiff water district. Specifically, the dispute involves the pricing formula of the contract, which provides:

"* * * [T]he [water] District shall pay for water supplied by the City at rates equivalent to the published schedule applicable to outside commercial water users plus the sum of One Dollar ($1.00) each month for each user connected to the District's water system. The City shall have the right, at its option, to change its published schedule of rates so as to affect the outside commercial schedule of rates to be paid by the District. The City shall bill the District each month for the water used as shown by the master meter for the District and the number of users connected to the system * * *."

The "master meter" refers to the fact that all water purchased by the water district flows through and is measured by a single meter.

This pricing formula has two components. The water district must monthly pay the city: (1) for the water that passed through the master meter—we call this "the gallon rate," *and* (2) an additional $1 for each user connected to the district's system—we call this "the surcharge."

This dispute arose when the city increased water rates. The plaintiff water district: (1) concedes the contract authorizes the city to increase the gallon rate, (2) argues the contract does not authorize the city to increase the surcharge, and (3) contends that by imposing what the new rate ordinance calls a "unit service charge" of $8.95 the city has invalidly increased the surcharge. The trial court agreed with the water district. We agree the contract authorizes the city to increase the gallon rate. We assume for present purposes that the contract does not authorize the city to increase the surcharge. Our ultimate disagreement

[ 651 ]

with the water district and the trial court is that we conclude the "unit service charge" is an increase in the gallon rate, not the surcharge.

The rate structure in effect when the contract was executed imposed a "minimum charge" of $6.32 for the first 3,000 gallons consumed in a month. Former Ordinance 329, § 10, as amended by former Ordinance 744. That former rate structure also included the following rule:

> "* * * When more than one household * * * is served through a single meter, the charges shall be computed on the basis of equal consumption by each household * * *." Former Ordinance 329, § 11.

The water district consists of "more than one household * * * served through a single meter," *i.e.,* what the contract calls the "master meter." So section 11 of the former rate ordinance required that the first step in computing the water district's monthly bill was to multiply the "minimum charge" by the number of households served by the water district. To illustrate, if there were 100 households in the water district, the minimum monthly charge for gallons consumed was $632, for which the district was entitled to 300,000 gallons, *i.e.,* 100 times the minimum charge ($6.32) buys 100 times the number of gallons (3,000) covered by the minimum charge.

The new rate—the genesis of the present dispute—is stated as follows:

> "BASIC UNIT SERVICE CHARGE FOR EACH UNIT AS DEFINED IN SECTION 1.g. ABOVE ......................................................... $ 8.95
> "EACH UNIT SHALL RECEIVE 1,000 GALLONS OF WATER FOR THE BASIC UNIT SERVICE CHARGE . . ." Ordinance 958, § 11.

The new rate ordinance also includes the following definitions:

> " 'A Unit' shall be defined as follows:
>     Single Family Dwelling .................1 unit per dwelling * * *." Ordinance 958, § 1(g).

" 'Unit Service Charge' shall mean the service charge to each unit connected by single or multiple connections to a meter." Ordinance 858, § 1(h).

These provisions establish that the "unit service charge" is really a minimum per month per household gallon rate. It applies to each household (or "unit"), regardless of whether serviced through an individual or a shared water meter. It buys the first 1,000 gallons of water used in a month.

Thus, the old and new rate systems express the same fundamental approach in different terms. What used to be called a "minimum charge" is now called a "unit service charge." And under both the old and new rate ordinances, the water district must pay one "minimum charge" or "unit service charge" for each household served through the single "master meter." The district is also liable for the separate $1 per month per user surcharge.

Reversed and remanded for entry of a decree consistent with this opinion.

**THORNTON, J.,** dissenting.

Having carefully studied the water purchase contract involved and examined the record, I must disagree with the majority's construction of this contract and agree with that of the trial judge. In my view, this contract is plain and unambiguous in its terms and permits no such convoluted construction as the majority opinion now places on it.

The district's claim to a supply of water from the city arises under the above mentioned contract, which was entered into by the parties on August 31, 1967. Under the terms of the agreement the city agreed to sell surplus water to the district conditioned upon the district's promise to pay the city a rate specified in the contract,

"* * * plus the sum of One Dollar ($1.00) each month for each user connected to the District's water system. * * *"

The contract was to be effective until January 1, 1997. By the further terms of the agreement the district agreed to pay the city a gallonage fee to be measured by a single meter at the point of delivery. The city reserved the right, however,

"* * * to change its published schedule of rates so as to affect the outside commercial schedule of rates to be paid by the District. * * *"

On January 17, 1977, the city enacted the ordinance establishing new rates for the supply and use of the water to users both inside and outside the city boundaries. Section 11 of the ordinance established a gallonage rate to each user of $1.23 per 1,000 gallons of water used, and a unit water service charge of $8.95 for each unit served. The first 1,000 gallons of water supplied to each unit were included under this basic unit service charge.

The dispute centers on the proper construction to be given the two clauses of the contract quoted above.

The city argues that the second clause giving the city power to "change its published schedule" gives it the right to increase the per unit charge and asserts that the first provision authorizing a $1 charge per month for each user was not intended by the parties to preclude increasing its overall charge per user.

The city insists that the parties intended by the above provision to provide that the city be authorized to increase water rates in the same manner as the ordinance now provides.

The district counters by arguing that the per unit charge must remain at the $1 per unit by the express terms of the first clause.

I agree with the trial judge that the contract limited the city to charge the district a gallonage rate, plus $1 for each user connected to the district's water system.

Likewise, I agree with the trial judge that the "Unit Service Charge" levied under the ordinance is the

equivalent of the "[charge] for each user connected to the District's water system" specified in the first clause set forth above of the 1967 contract.

Next, the term "outside commercial schedule of rates," used in the 1967 contract, means sales of water to commercial customers such as water districts and not sales to households. As I read the entire contract, this charge is the only charge which is subject to future adjustment by the city according to the terms of the second clause of the contract set forth above.

Thus, while the city is entitled to increase its gallonage charge to nonresidents, it must nevertheless limit its per user charge to $1 a month each.

What the city apparently attempted to do in passing the challenged ordinance was to change the basis for making its charge from the total gallonage for the entire water district to a per unit basis for each individual user with a gallonage charge to each user depending on how much water each user consumed. This new basis of charging runs afoul of the express terms of the existing contract.

Summarizing then, while the city is authorized to increase its water rates, it may not do so in the manner attempted in the challenged ordinance insofar as plaintiff water district and its customers are concerned.

The conclusion reached in the majority opinion simply does not stand up under close analysis.

First of all, the majority, without any support in the record, states that the gallonage charge to the water district prior to the amended ordinance was computed as if each user were being billed, thereby avoiding the then existing stepped down rate per thousand gallons after the first 3,000 gallons shown on the single meter. If the record supported that analysis, or if the city's contentions were based on that state of facts, I would agree with the majority. However, the evidence in the record is directly to the contrary.

[ 655 ]

The contract expressly provides as follows:

"WATER RATES: * * * The City shall bill the District each month for the water used as shown by the master meter for the District and the number of users connected to the system and the amount there shall be paid by the District to the City within one (1) month from the date of such billing.

"MASTER METER AND WATER LOSS: The District shall provide a master meter and cause the same to be installed at the point where the District takes water from the City's water system * * *."

Further, Clyde Head, one of the five water commissioners of plaintiff district, testified that the city billed the district monthly on the total number of gallons that went through the master meter; that the district writes only one check to the city for the total charge; and that the city had never billed the individual users within the district for the water they used. The city recorder essentially testified to the same effect.

Thus, by the terms of the contract just quoted the district buys the water in bulk. It then distributes it to a host of individual users and collects from these users.

Second, the majority's conclusion is based on a provision of Ordinance 329 (§ 11) that has no application to the present contract situation. This section provides as follows:

"Multiple Service Computations. When more than one household or commercial establishment or combinations thereof, is served through a single meter, the charges shall be computed on the basis of equal consumption by each household or commercial establishment; except that where a hotel is served by the same meter as other commercial establishments, minimum charges are to be made to each commercial establishment other than the hotel, and the balance of the usage will be charged at the regular commercial rate."

The above provision was not even mentioned by the city in support of its position here. I find this very significant. Yet, the majority apparently rests its

[ 656 ]

entire conclusion on this irrelevant provision. Section 11, as I read it, deals with a different circumstance entirely, namely, those instances in which two or more retail customers are served through a single meter, and who are billed directly by the city. But we are dealing here with an express written contract. It is this contract that controls on the point in issue rather than § 11.

Third, the majority opinion disregards the fact that the "Unit Service Charge" in the new ordinance runs into direct conflict with the $1 per household limit spelled out in the 1967 contract.

A plain and unambiguous contract leaves no room for construction. *Salem King's Products Co. v. Ramp,* 100 Or 329, 196 P 401 (1921). A court cannot rewrite a contract for the purpose of accomplishing a result which may appear more appropriate in the court's opinion. *City of Reedsport v. Hubbard et ux,* 202 Or 370, 274 P2d 248 (1954).

For the foregoing reasons I respectfully dissent.

Lee, Buttler and Joseph, JJ., join in this dissent.