

FILED

May 30 2017, 10:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Tracy D. Knox
Brian E. Casey
Barnes & Thornburg LLP
South Bend, Indiana

ATTORNEYS FOR APPELLEES

John A. Conway
Paul Edgar Harold
Stephen M. Judge
LaDue Curran & Kuehn LLC
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

B&R Oil Company, Inc.,
Empire Petroleum Partners,
LLC, and EPP-Atlas
Acquisition, LLC,

*Appellants-Defendants,*

v.

William E. Stoler, Kathlyn
Stoler, Jeffrey A. Levy, and
Con-Serve, Inc.,

*Appellees-Plaintiffs.*

May 30, 2017

Court of Appeals Case No.
71A04-1603-PL-608

Appeal from the St. Joseph Circuit
Court

The Honorable Michael G.
Gotsch, Judge

Trial Court Cause No.
71C01-1412-PL-353

**Najam, Judge.**

# Statement of the Case

B&R Oil Company, Inc. ("B&R Oil"), Empire Petroleum Partners, LLC, and EPP-Atlas Acquisitions, LLC (we refer to the LLCs collectively as "Empire") bring this interlocutory appeal from the trial court's entry of summary judgment for William E. Stoler, Kathlyn Stoler, Jeffrey A. Levy, and Con-Serve, Inc. (collectively referred to as "the Stolers") on the Stolers' complaint for breach of contract against B&R Oil. B&R Oil and Empire raise three issues for our review, which we consolidate and restate as whether the undisputed designated evidence demonstrates, as a matter of law, that B&R Oil breached its lease agreements with the Stolers. As a matter of first impression in Indiana, we hold that a lessor may not circumvent a lessee's contractual right of first refusal to purchase the leased premises by submitting a third-party offer to the lessee in which the leased premises are bundled with other property. Accordingly, we affirm the trial court's summary judgment for the Stolers.

# Facts and Procedural History[1]

Beginning in the 1990s, the Stolers leased several parcels of real property from B&R Oil and began to operate gas stations on those properties. The leases were for initial three-year terms with options to renew. The Stolers regularly renewed their leases and continually operated the gas stations since first leasing the properties.

---

[1] We held oral argument on April 11, 2017.

[3]     Pursuant to the lease agreements, the Stolers held rights of first refusal ("ROFR") that protected them against a third-party purchase of the leased premises. Specifically, each identical ROFR stated:

> The Lessor hereby agrees that Lessees shall have, during the term of this lease, and so long as Lessees are in compliance with the terms hereof, the right of first refusal *to purchase the leased premises*. Accordingly, in the event that a bona fide offer *to purchase the leased premises* is presented to Lessor, Lessor shall give Lessees Fifteen (15) days for Lessees to make to Lessor a firm commitment to match said offer and to seek financing for the purchase of the property at said purchase price before Lessor sells its interest in the leased premises to a third party. Said Fifteen (15) day period shall commence when Lessors give to Lessee written notice of a bona fide offer to purchase. It is further agreed that, in the event that this right of first refusal is exercised by Lessees, that Lessor shall extend to Lessees the same terms for purchase that were extended to the party who originally made the bona fide offer to purchase which triggered the terms hereunder.

Appellants' App. Vol. V at 46, 59 (emphases added).

[4]     In 2014, B&R Oil signed a letter of intent to sell substantially all of its assets to Empire for approximately $80,000,000. Empire's purchase offer included the premises leased to the Stolers, at least sixteen other parcels of real property, fuel supply contracts for more than 100 sites, and various pieces of equipment. Thereafter, B&R Oil notified the Stolers that it had received Empire's third-party offer to purchase the leased premises and, accordingly, that B&R Oil was providing the Stolers "with a right of first refusal to purchase the Premises on

the same terms and conditions set forth" by Empire within fifteen days of the notices. *Id.* at 71, 75.

[5] The Stolers responded to B&R Oil and stated their intent to exercise the ROFR in each lease. Specifically, the Stolers informed B&R Oil that they would match Empire's offer "for the Premises" and requested that B&R Oil provide additional information regarding Empire's terms with respect to only the leased premises. *Id.* at 79-80. However, B&R Oil responded and informed the Stolers that, if they wished to exercise their ROFR, they would "be required to match the Offer and tender $80,000,000 for the Premises and all other assets included in the Offer."[2] *Id.* at 81, 83. The Stolers challenged B&R Oil's interpretation of the contract, stating that the attempt by B&R Oil "to force [the Stolers] to purchase substantially all of B&R [Oil's] assets to exercise their respective rights of first refusal constitutes both an anticipatory repudiation of the parties' leases and a[] breach of those leases." *Id.* at 86.

[6] On December 22, 2014, the Stolers filed their lawsuit against B&R Oil and Empire. In their complaint, the Stolers alleged that B&R Oil had breached the lease agreements by not allowing the Stolers to purchase the leased premises before selling the premises to Empire. The Stolers sought monetary damages, specific performance, and/or injunctive relief. After the trial court denied the Stolers' requests for a temporary restraining order and a preliminary injunction,

---

[2] We note that, notwithstanding B&R Oil's representations to the contrary, the record demonstrates that Empire had determined values for the specific properties at issue in this appeal. *See* Appellants' App. Vol. V at 157.

B&R Oil and Empire closed their transaction, and B&R Oil assigned the Stolers' lease agreements to Empire.

Thereafter, the parties each moved for summary judgment. After a hearing, the trial court granted partial summary judgment for the Stolers on their claim of breach of the lease agreements. The court denied summary judgment for B&R Oil and Empire and withheld ruling on the Stolers' proper remedy. The trial court certified its order for interlocutory appeal, which we accepted.

## Discussion and Decision

### *Overview*

B&R Oil and Empire (hereinafter collectively referred to as "B&R Oil") appeal the court's summary judgment for the Stolers. Our standard of review is clear:

> We review summary judgment *de novo*, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

> The initial burden is on the summary-judgment movant to "demonstrate [ ] the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-

movant to "come forward with contrary evidence" showing an issue for the trier of fact. *Id.* at 761-62 (internal quotation marks and substitution omitted). And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (alterations original to *Hughley*).

[9] Here, the trial court entered detailed findings of fact and conclusions thereon in its summary judgment order. While such findings and conclusions are not required in a summary judgment and do not alter our standard of review, they are helpful on appeal for us to understand the reasoning of the trial court. *See Knighten v. E. Chicago Hous. Auth.*, 45 N.E.3d 788, 791 (Ind. 2015). We also note that the trial court had before it cross-motions for summary judgment, but that also does not alter our standard of review. *Id.*

[10] This appeal requires the interpretation of a contract. Interpretation and construction of contract provisions are questions of law. *John M. Abbott, LLC v. Lake City Bank*, 14 N.E.3d 53, 56 (Ind. Ct. App. 2014). As such, cases involving contract interpretation are particularly appropriate for summary judgment. *Id.* And because the interpretation of a contract presents a question of law, it is reviewed *de novo* by this court. *Jenkins v. S. Bend Cmty. Sch. Corp.*, 982 N.E.2d 343, 347 (Ind. Ct. App. 2013), *trans. denied*.

[11] We review the contract as a whole, attempting to ascertain the parties' intent and making every attempt to construe the contract's language "so as not to render any words, phrases, or terms ineffective or meaningless." *Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d 494, 501 (Ind. Ct. App. 2007). "And, in reading the terms of a contract together, we keep in mind that the more specific terms control over any inconsistent general statements." *DLZ Ind., LLC v. Greene Cty.*, 902 N.E.2d 323, 328 (Ind. Ct. App. 2009).

[12] The contracts at issue on appeal require our interpretation of right-of-first-refusal provisions. A right of first refusal is a "valuable contractual right" in which the right-holder may "preempt" a third-party offer for a protected interest. *Hyperbaric Oxygen Therapy Sys., Inc. v. St. Joseph Med. Ctr. of Ft. Wayne, Inc.*, 683 N.E.2d 243, 248 (Ind. Ct. App. 1997) (quoting 3 Arthur Linton Corbin & Eric Mills Holmes, Corbin on Contracts § 11.3 at 468-69 (rev. ed. 1996)), *trans. denied*; *Arlington State Bank v. Colvin*, 545 N.E.2d 572, 578 (Ind. Ct. App. 1989), *trans. denied*. It is a "dormant" right "that does not entitle the holder to take any action until receipt of a bona fide offer." *Beiger Heritage Corp. v. Estate of Kilbey*, 667 N.E.2d 184, 186 (Ind. Ct. App. 1996), *trans. denied*. With respect to real property interests, once a property owner communicates a bona fide third-party offer to the right-holder, the right of first refusal is "transmuted into an option." *Id.* "An option is a continuing offer whose duration and method of exercise is strictly controlled by the agreement that created it." *Id.*

[13] Again, the ROFR at issue in this appeal states:

> The Lessor hereby agrees that Lessees shall have, during the term of this lease, and so long as Lessees are in compliance with the terms hereof, the right of first refusal *to purchase the leased premises*. Accordingly, in the event that a bona fide offer *to purchase the leased premises* is presented to Lessor, Lessor shall give Lessees Fifteen (15) days for Lessees to make to Lessor a firm commitment to match said offer and to seek financing for the purchase of the property at said purchase price before Lessor sells its interest in the leased premises to a third party. Said Fifteen (15) day period shall commence when Lessors give to Lessee written notice of a bona fide offer to purchase. It is further agreed that, in the event that this right of first refusal is exercised by Lessees, that Lessor shall extend to Lessees the same terms for purchase that were extended to the party who originally made the bona fide offer to purchase which triggered the terms hereunder.

Appellants' App. Vol. V at 46, 59 (emphases added).

[14] On appeal, B&R Oil first argues that the $80,000,000 purchase offer did not trigger the Stolers' ROFR because the $80,000,000 offer was not an offer for only the leased premises. In the alternative, B&R Oil argues that, if the offer was an offer for the leased premises, B&R Oil complied with the ROFR when it gave the Stolers the opportunity to match the $80,000,000 offer. We address each argument in turn.

### *Whether Empire's Offer Triggered the ROFR*

[15] We first consider B&R Oil's argument that the $80,000,000 purchase offer did not trigger the Stolers' ROFR. We cannot agree. According to the ROFR, the right is triggered when there is a "bona fide offer to purchase the leased

premises." *Id.* One significant reason for a lessee to negotiate for a ROFR is to protect the lessee from being forced into a relationship with an unknown third-party lessor. Here, the $80,000,000 offer sought, albeit among other things, to purchase the leased premises. And the offer, once finalized, forced the Stolers into a relationship with an unknown third party as their new lessor. While, as discussed below, the Empire offer was nonconforming, the offer nevertheless included an offer to purchase the leased premises, which confronted the Stolers with the prospect of a new lessor. Thus, we conclude that the $80,000,000 offer triggered the ROFR and the Stolers' option to purchase the leased premises.

### Whether B&R Oil Breached the Lease Agreements

[16] We next turn to B&R Oil's alternative argument on appeal, namely, that it complied with the ROFR when it presented the Stolers with an opportunity to match the $80,000,000 offer. We agree with the trial court that the undisputed material facts in this case demonstrate that B&R Oil breached the lease agreements when B&R Oil sought "to nullify the ROFR by allowing the leased premises to be sold in conjunction with other parcels as part of a package deal . . . ." Appellants' App. Vol. VI at 170.

[17] On appeal, both parties contend that the other's interpretation of the ROFR would require that additional terms be added to the text of the ROFR. B&R Oil contends that the Stolers' interpretation would require this court to add the term "exclusively" to the ROFR such that it provides for a right "to purchase the leased premises exclusively." *See* Appellants' Br. at 44, 53. At the same

time, the Stolers contend that B&R Oil's interpretation would require this court to add the phrase "along with any other offered property" to the ROFR such that it includes a right "to purchase the leased premises along with any other offered property." *See* Appellees' Br. at 36. In advancing these arguments, each side contends, in effect, that its own interpretation of the ROFR must be unambiguous because the other's interpretation requires supplying missing terms. But the fact that the parties disagree over the meaning of the contract does not, in and of itself, establish an ambiguity. *Claire's Boutiques, Inc. v. Brownsburg Station Partners LLC*, 997 N.E.2d 1093, 1097 (Ind. Ct. App. 2013). Nor may a court write a new contract for the parties or supply missing terms. *Id.* at 1098. We must interpret the contract as written, not as it might have been written.

[18] The contracts as written are unambiguous and do not require the addition of missing terms. "Leased premises" can only mean one thing—it is the property leased by the Stolers. When a contract is clear and unambiguous, the language must be given its plain meaning. *Van Prooyen Builders, Inc. v. Lambert*, 907 N.E.2d 1032, 1035 (Ind. Ct. App. 2009). There is nothing in the text of the ROFR that states, expressly or implicitly, that the ROFR applies to any other property. *See Ryan v. Lawyers Title Ins. Corp.*, 959 N.E.2d 870, 877-78 (Ind. Ct. App. 2011) (holding that a right of first refusal did not state expressly or implicitly that it was other than personal). And there is nothing in the text of the ROFR that suggests or would support an inference that the ROFR either grants a preemptive right to the Stolers—or requires the Stolers—to purchase

any property other than "the leased premises" should they exercise their right of first refusal. The leased premises was the only property within the contemplation of the parties when the leases were executed.

[19] When interpreting a written contract, we attempt to determine the intent of the parties at the time the contract was made. *Id.* at 875. If necessary, the text of a disputed provision may be understood by reference to other provisions within the four corners of the document. *Claire's Boutiques*, 997 N.E.2d at 1098. Here, not only the text of the ROFR itself but also the lease agreements as a whole make the intent of the parties clear. Each lease agreement pertains to only a single property described as "the leased premises." Appellants' App. Vol. V at 37, 52. Since the leases refer only to "the leased premises" and not to any other property, it follows that each ROFR encompasses only one property. Whether we consider the plain meaning of the ROFR in itself or the lease as a whole, we cannot say that the inclusion of any property other than "the leased premises" may reasonably have been within the contemplation of the parties at the time the leases were executed.

[20] Accordingly, it is the Stolers' interpretation of the ROFR that is consistent with the lease agreements as a whole. That is, the Stolers' interpretation of the ROFR is the reading that reflects the intent of the parties to the lease agreements. As such, we conclude that each ROFR means that, upon B&R Oil's presentation of a conforming third-party offer, the right-holder will have the option to purchase the leased premises and only the leased premises.

[21] Further, B&R Oil's interpretation of the ROFR could yield an absurd result. There were several B&R Oil leases with identical ROFR provisions. Thus, had two or more of the lessees agreed to match the $80,000,000 Empire offer, there would have been competing and irreconcilable options to purchase the same properties, including options to purchase each other's leased premises. The ROFR of each lessee would not have been preemptive or exclusive but would have been in direct conflict with the option rights of another lessee or lessees. The parties could not have intended that the ROFR would permit such an untenable collision of rights between or among the lessees.

[22] And B&R Oil's reading of the ROFR is implausible for other reasons. Empire's offer was a part-cash, part-stock offer. As such, it would have been impossible for the Stolers to offer stock and to match the terms of the offer.[3] And it was also unlikely that the parties to the lease agreements anticipated that the purchase price for a single gas station would amount to as much as $80,000,000. A purchase price of that magnitude would not have been within the reasonable contemplation of the parties when they negotiated the ROFR for "the leased premises." We agree with the trial court that, in its operation and effect, B&R Oil's interpretation of the ROFR nullifies the right of first refusal.

---

[3] Even if we were to accept B&R Oil's interpretation of the ROFR, which we do not, we would still be obliged to hold that B&R Oil breached the lease agreements. Empire's offer to B&R Oil was to pay $48,000,000 in cash and the remainder in equity ownership in Empire, along with other consideration. Appellants' App. Vol. V. at 108, 112. The ROFR required that B&R Oil present those terms to the Stolers, *id.* at 46, 59, but B&R Oil did not do so. Instead, B&R Oil omitted the details of Empire's payment structure and implied to the Stolers that they were required to pay $80,000,000 in cash to exercise their rights under each ROFR.

## *The Hamlin Doctrine*

[23]    In addition to the legal and practical implausibility of B&R Oil's interpretation of the ROFR, a party to a contract that contains a ROFR may not circumvent that provision merely by presenting to the right-holder a third-party offer that includes other unrelated property. In *Hamlin v. Steward*, 622 N.E.2d 535, 540 (Ind. Ct. App. 1993), this court held that a party may not rely on the failure of a contractual condition precedent to excuse performance where that party's own inaction caused the failure. The Indiana Supreme Court has agreed, concluding that "[t]he *Hamlin* doctrine prevents a party from acts of contractual sabotage or other acts in bad faith by a party that causes the failure of a condition." *Ind. State Highway Comm'n v. Curtis*, 704 N.E.2d 1015, 1019 (Ind. 1998).

[24]    Under the ROFR, B&R Oil retains control over the condition precedent of a third-party offer, and B&R Oil can satisfy that condition only by presenting an offer to the lessees that conforms with the ROFR. Instead, here, B&R Oil breached its obligation and caused the failure of the condition precedent when it presented the Stolers with a nonconforming third-party offer and then used the Stolers' refusal to match that offer as an excuse to circumvent the ROFR and sell the leased premises to Empire. B&R Oil caused the failure of the condition precedent by presenting a nonconforming offer to purchase, which included unrelated properties. In so doing, contrary to the *Hamlin* doctrine, B&R Oil sabotaged the ROFR.

[25]    Thus, B&R Oil may not engage in contractual sabotage by means of its own inaction. *Hamlin*, 622 N.E.2d at 540. B&R Oil acted as a mere conduit

between Empire and the Stolers. But the ROFR provisions imposed an affirmative duty on B&R Oil either to exclude the leased properties from the third-party offer or to allocate and attribute a portion of the purchase price to the leased premises so that each of the right-holders could exercise their rights under the ROFR. B&R Oil simply presented the third-party offer "as is" to the Stolers, an offer which bundled the leased properties with other property interests unrelated to the leased premises. B&R Oil's failure to comply with the ROFR and to present a conforming third-party offer was a breach of the lease agreements.

[26] Finally, our interpretation of the ROFR provisions brings Indiana's jurisprudence in line with the substantial weight of authority from other jurisdictions that have considered such issues. *See Maron v. Howard*, 66 Cal. Rptr. 70, 78 (Cal. Ct. App. 1968) ("Recognizing [the lessee's] rights under the agreement, [the lessors] could have allocated a portion of the total purchase price to the [leased] parcel and thus have given the [lessee] a clear opportunity to have exercised his right."); *Thomas & Son Transfer Line, Inc. v. Kenyon, Inc.*, 574 P.2d 107, 112 (Colo. App. 1977) ("An owner of property cannot defeat a right of refusal simply by selling the optioned property with other properties which he may own."), *aff'd*, 586 P.2d 39, 40 (Colo. 1978); *Whyhopen v. Via*, 404 So. 2d 851, 853 (Fla. Dist. Ct. App. 1981) ("[lessors'] argument that tenants were required to exercise their option as to all the land listed on the contract for sale is incorrect."); *Radio WEBS, Inc. v. Tele-Media Corp.*, 292 S.E.2d 712, 714-15 (Ga. 1982) ("It is manifestly clear that [the parties to the contract] contemplated

only the sale of the assets or stock of the [business] when the right of first refusal was negotiated. . . . [T]o find otherwise would facilitate defeat of contractual rights of first refusal by inclusion of extraneous matters."); *Kutkowski v. Princeville Prince Golf Course, LLC*, 300 P.3d 1009, 1016 (Haw. 2013) ("[the lessor's argument] renders ROFR's [sic] over smaller parcels illusory upon the lessor's decision to include the smaller parcel as part of a larger property sale to a third party, which does not enforce the parties' bargain for a ROFR."); *Gyurkey v. Babler*, 651 P.2d 928, 933 (Idaho 1982) ("[the smaller lot] could not be sold as part of a larger parcel as long as the lot was subject to [the] right of first refusal."); *Myers v. Lovetinsky*, 189 N.W.2d 571, 575 (Iowa 1971) ("This is a case in which landlords sell the whole farm including the demised premises to purchasers without separately pricing the demised premises and the rest of the farm. . . . [T]he landlord breaches the tenant's preferential right by so doing."); *Anderson v. Armour & Co.*, 473 P.2d 84, 89 (Kan. 1970) (rejecting as "completely untenable" the lessor's argument that "the clause in question was not breached because" the leased premises were within "a larger tract . . . [that] was disposed of"); *Straley v. Osborne*, 278 A.2d 64, 70 (Md. 1971) ("the lessor cannot act in derogation of the lessee's 'first option' rights in the leased premises . . . . [T]o rule otherwise would be to allow a lessor to render the lessee's bargained for 'first option' a nullity by merely including it in a larger tract being offered for sale."); *Plante v. Town of Grafton*, 775 N.E.2d 1254, 1258 (Mass. App. Ct. 2002) ("a seller may not defeat a right of first refusal by confronting the optionee with terms that include acquisition of land in addition to that covered by the right."); *Brenner v. Duncan*, 27 N.W.2d 320, 322 (Mich. 1947) ("acceptance [of the third-

party offer] by plaintiffs was made impossible by the defendants. Defendant [landowner] sold to [the third-party defendant] . . . the property covered by the option together with the adjacent parcel for one stipulated price . . . . [This] constituted a breach of contract."); *Guaclides v. Kruse*, 170 A.2d 488, 495 (N.J. Super. Ct. App. Div. 1961) ("We concur in the generally accepted view as to the optionee's right to an injunction to restrain a vitiating of its option by the inclusion, in the owner's prospective sale, of property in excess of that covered by the option. To allow the owner of the whole to by-pass the optionee merely by attaching additional land to the part under option would render nugatory a substantial right which the optionee had bargained for and obtained."); *C&B Wholesale Stationery v. S. De Bella Dresses, Inc.*, 349 N.Y.S.2d 751, 753 (N.Y. App. Div. 1973) ("The lessor's sale of the leased premises as part of the larger parcel violated the first refusal clause of the lease."); *Stuart v. Stammen*, 590 N.W.2d 224, 228 (N.D. 1999) ("When a party has a right of first refusal on specified property, the seller cannot add additional property and make it part of the package, thereby forcing the option holder to purchase the additional property to exercise the option."); *Ollie v. Rainbolt*, 669 P.2d 275, 281 (Okla. 1983) ("A preemption-affected seller . . . should not be allowed to defeat or impair a bargained-for 'right of first refusal' by a package-deal offer that includes property which lies dehors the preemption obligation."); *Boyd & Mahoney v. Chevron U.S.A.*, 614 A.2d 1191, 1194 (Pa. Super. Ct. 1992) ("Common sense and the applicable case law of this jurisdiction require us to hold that a right of first refusal as to the conveyance of a property cannot be defeated by including that property in a multi-property or multi-asset transaction."); *Sawyer v.*

*Firestone*, 513 A.2d 36, 40 (R.I. 1986) ("We agree with the majority view that a seller may not defeat a right of first refusal by selling the property subject to the right as part of a larger tract."); *Navasota Res., L.P. v. First Source Tex., Inc.*, 249 S.W.3d 526, 535 (Tex. App. 2008) ("Virtually every authority of which we are aware agrees that the holder of a preferential right cannot be compelled to purchase assets beyond those included within the scope of the agreement subject to the preferential right in order to exercise that right."); *Landa v. Century 21 Simmons & Co.*, 377 S.E.2d 416, 421 (Va. 1989) (holding that the option holders were "entitled to exercise their right of first refusal" with respect to the premises "despite the fact that [the landowner] contracted . . . to sell the [premises] along with a separate . . . parcel"); *Wilber Lime Prods., Inc. v. Ahrndt*, 673 N.W.2d 339, 656-57 (Wis. Ct. App. 2003) ("the sale of the entire 180-acre farm . . . triggered [the] right of first refusal to the twenty-five acres. . . . The twenty-five acres were sold, albeit as part of a package deal. [The option holder] should therefore have had the right to purchase the land."); *Chapman v. Mut. Life Ins. Co.*, 800 P.2d 1147, 1151 (Wyo. 1990) ("a preemptive right may not be defeated by a sale of the property burdened by the right as part of a larger tract. Any other result is necessarily unacceptable because . . . [it] would render nugatory a substantial right . . . ."). *But see Crow-Spieker #23 v. Robert L. Helms Constr. & Dev. Co.*, 731 P.2d 348, 350 (Nev. 1987) (holding that a ROFR was not implicated by the sale of the protected property as part of a larger sale agreement, though noting that the court "would not condone an attempt to evade [the right-holder's] contractual rights by engineering the sale of a larger parcel"); *Advanced Recycling Sys., LLC v. Se. Props. Ltd. P'ship*, 787 N.W.2d 778,

785 (S.D. 2010) (holding that a third-party offer for a property protected by a ROFR as part of a package deal with other, unrelated property does not invoke the ROFR).

[27] In sum, the designated evidence demonstrates that there is no genuine issue of material fact with respect to whether B&R Oil breached the lease agreements. Although B&R Oil presented the Stolers with a third-party offer to purchase the leased premises, B&R Oil did not present the Stolers with an exclusive option to purchase the leased premises, and only the leased premises identified in each lease agreement, as required by the ROFR. Thus, we affirm the trial court's entry of summary judgment for the Stolers.

[28] Affirmed.

May, J., concurs.

Bailey, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

B&R Oil Company, Inc.,
Empire Petroleum Partners, and
EPP-Atlas Acquisition, LLC

*Appellants-Defendants,*

v.

William E. Stoler, Kathlyn
Stoler, Jeffrey A. Levy, and
Con-Serve, Inc.,

*Appellees-Plaintiffs.*

Court of Appeals Case No.
71A04-1603-PL-608

**Bailey, Judge, dissenting.**

I agree with the majority that the package offer triggered the rights of first refusal ("ROFR"). The majority next concludes, however, that B&R Oil breached the ROFR when it gave the lessees the opportunity to match the package offer instead of obtaining an offer specific to each leased premises. Because I would instead conclude that B&R Oil met its obligations under the plain language of the contract, I must dissent.

[30]    When the language of a contract is unambiguous, we are to "give effect to the parties' intentions as expressed in the four corners of the instrument. Clear, plain, and unambiguous terms are conclusive of that intent. This court will not construe clear and unambiguous provisions, nor will we add provisions not agreed upon by the parties." *Hyperbaric Oxygen Therapy Sys., Inc. v. St. Joseph Med. Ctr. of Ft. Wayne, Inc.*, 683 N.E.2d 243, 247-48 (Ind. Ct. App. 1997), *trans. denied.* (internal quotation marks and citation omitted); *see also Ryan v. TCI Architects/Engineers/Contractors, Inc.*, No. 49S02-1704-CT-253, slip op. at 6 (Ind. Apr. 26, 2017) ("In interpreting a contract, we ascertain the intent of the parties at the time the contract was made, as disclosed by the language used to express the parties' rights and duties.").

[31]    Here, the plain language of the contract dictates precisely what must happen when B&R Oil receives a triggering offer: "Lessor shall give Lessees Fifteen (15) days for Lessees to make to lessor a firm commitment to match *said offer* and to seek financing for the purchase of the property *at said purchase price* before Lessor sells its interest in the leased premises to a third party." Appellant's App. Vol. V at 46, 59 (emphases added). B&R Oil notified the lessees that it received a package offer, and the lessees declined to make a package purchase.[4] Thus, applying the negotiated contract language—and only those agreed-to

---

[4] The majority notes that even if it accepted B&R Oil's interpretation of the ROFR, it would conclude that B&R Oil was in breach because it did not communicate the precise terms of the triggering offer. I see no breach, however, because the lessees rejected the opportunity to make a package purchase and none has contended that it would have made such a purchase.

terms—I would conclude that B&R Oil did not breach the ROFR, and is therefore entitled to summary judgment.

[32] In reaching an opposite conclusion, the majority characterizes B&R Oil's actions as contractual sabotage because B&R failed to "present[] an offer to the lessees that conforms with the ROFR." Slip op. at 13. But the contract does not define conforming or non-conforming offers, nor does it restrict the ROFR from applying to any offer that B&R Oil intended to accept. Rather, the defined right is the opportunity to match a third-party offer. Had the parties wished to restrict B&R Oil from passing through package offers, they could have readily done so.

[33] The majority also expresses concern about what might have happened if, under B&R Oil's interpretation, more than one lessee had wished to match the package deal. I would not, however, forecast "an untenable collision of rights," slip op. at 12, but instead a predictable result. That is, a right of first refusal applies only where the seller intends to accept the third-party offer. *See Hay v. Hay*, 885 N.E.2d 21, 24 (Ind. Ct. App. 2008) ("A right of first refusal is a potential buyer's contractual right to meet the terms of a third party's offer if the seller intends to accept that offer.") (internal quotation marks omitted). Had more than one party wished to make the package purchase, then I suspect that B&R Oil would have intended to accept the highest offer. *See also* "Right of First Refusal," Black's Law Dictionary (10th ed. 2014) (defining the right as "[a] potential buyer's contractual right to meet the terms of a third party's higher offer"). Indeed, no language in the ROFR prevents continued

negotiations, and nothing about B&R Oil's interpretation necessarily yields a result more peculiar than that of any "seller's market," in which a seller seeks the best-possible deal while multiple parties jockey for the same property.

[34] It should also be noted that the lessees' rights were not nullified by the Empire sale, but instead remained unchanged. That is, when Empire purchased the properties from B&R Oil, the leases stood in full force, obligating Empire to comply with the ROFR for the entire term of each lease. Thus, should Empire wish to sell either property—individually or otherwise—Empire must do what B&R Oil has done, and give the lessees the opportunity to match a triggering offer, which is all that the ROFR contemplates.

[35] Ultimately, I do not see a matter of first impression, but instead an ordinary matter of contract interpretation. Thus, I would apply Indiana's approach to contract interpretation, which is both clear and predictable, even when the consequences of doing so might seem unfair: we treat bargained-for language as the parties' intent. Applying that unambiguous language here, I would reverse and remand for entry of summary judgment in favor of B&R Oil and Empire.

[36] I therefore respectfully dissent.